E-FILED
Monday, 12 December, 2011 12:56:41 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JABARI A. VEALS | ) |
| Petitioner, | ) |
| v. | ) Case No. 11-CV-2122 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

# OPINION

Petitioner, Jabari A. Veals, filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) on May 9, 2011.[1] On June 13, 2011, the government filed its Response (#3) to the Petitioner's Motion Pursuant to 28 U.S.C. § 2255. On July 22, 2011, the Petitioner filed two separate documents, specifically: (1) he filed his Reply (#6) to the government's Response; and (2) he filed a Motion for Leave of Court to Conduct Discovery and to Expand the Record (#5). On August 8, 2011, the government filed its Response (#8) to the Petitioner's Motion for Leave of Court to Conduct Discovery and to Expand the Record. For the following reasons the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (#1) is DENIED.

# BACKGROUND

---

[1] According to the prison mailbox rule, Petitioner's Motion was filed on May 9, 2011, instead of the date it was electronically filed on May 12, 2011. Houston v. Lack, 487 U.S. 266, 270 (1988); see also Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999) (extending the prison mailbox rule to prisoners filing *pro se* habeas corpus petitioners).

1

Decatur police obtained a warrant to search a second-floor apartment at 837 East Johns Street in Decatur, Illinois, which was executed by police officers on January 9, 2007. When officers entered the apartment, an officer who was stationed outside of the apartment watched a man, Petitioner Jabari A. Veals, jump from the second-floor apartment's window. Despite police orders to stop, Petitioner attempted to escape on foot, however he was captured following a brief but heated chase. Inside the apartment, officers found 56 grams of crack cocaine inside a jar of hair gel, which was found on a shelf alongside Veal's other personal items. On January 16, 2007, Petitioner was charged by complaint in federal court with possessing 50 or more grams of a substance containing cocaine base (crack) with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On that same day, Assistant Public Defender John C. Taylor ("Taylor") was appointed to represent the Petitioner.

On January 18, 2007, the Government sent Taylor a proposed cooperation agreement. After the Petitioner discussed the proposed cooperation agreement with Taylor, Petitioner agreed to cooperate and signed the agreement along with Taylor. The agreement obligated Petitioner to provide the government with complete and truthful information and required him to testify before any grand jury that he was called to by the government. In return, Petitioner was promised that statements made under the agreement would not be used directly at trial or his sentencing, however they could be used to impeach his credibility or to rebut contrary statements at trial. Additionally, the government agreed to consider moving for a sentence below the statutory minimum if Petitioner provided substantial assistance to

the government. These promises by the government, however, were dependent on Petitioner's complete compliance with his reciprocal promises.

On February 2, 2007, Petitioner, who was detained at the Ford County Jail pending trial, was interviewed at the jail by Decatur Detective Ed Root ("Detective Root") and FBI Special Agent Jeff Warren ("Special Agent Warren"). Although Taylor was aware of this cooperation interview, he did not attend the interview. During the interview, Petitioner admitted that he was dealing crack cocaine from the apartment where the drugs were found and identified his supplier, a local dealer nicknamed Magic. On August 24, 2007, Petitioner was served through Taylor with a subpoena that directed the Petitioner to testify before a federal grand jury on September 11, 2007. Petitioner refused to comply, and the government thereafter requested an evidentiary hearing to determine whether Petitioner had breached his cooperation agreement with the government. On September 24, 2007, this court held an evidentiary hearing and held that the Petitioner had in fact breached the unambiguous terms of the written agreement and had therefore given up his immunity. As a result, Petitioner was put on notice that his statements during the cooperation interview were no longer protected by immunity.

At trial, the government called the following primary witnesses: (1) a police officer who participated in the search of the residence; (2) a police officer who testified that he saw Petitioner jump of the apartment's window; (3) David Parker, who testified that he allowed the Petitioner to live in his apartment in exchange for crack cocaine, and that Petitioner had lived there for months and slept on the air-mattress and kept his belongings on the shelf

3

where the jar was found; (4) Detective Root, who testified about his search of the apartment and described the items on the shelf where the jar was found, as well as about Petitioner's admissions at the cooperation interview on February 2, 2007; (5) Special Agent Warren, who testified about Petitioner's admissions and fully corroborated Detective Root's testimony about the cooperation interview. Additionally, the government called a fingerprint expert who testified that there were no fingerprints on the jar, a forensic chemist who analyzed the crack cocaine, and a woman who also lived in the apartment with the Petitioner. For the defense, the sole witness was the Petitioner. Petitioner testified that he did not live at Parker's apartment, but was only there for a few hours before the search was executed in order to give one of his friends a haircut. He also testified that he had first met Magic that night, and Magic had left moments before the police arrived. Although he acknowledged that some of the items on the shelf were his, including a Bible and two bags of marijuana, he denied ever seeing the jar of hair gel. Further, he testified that he never knew police were entering the apartment when he jumped out the window, but rather he jumped in response to a female guest's scream when someone knocked at the door. Finally, Petitioner testified that both Detective Root and Special Agent Warren were lying regarding the incriminating statements he made at the meeting on February 2, 2007. After hearing all testimony, the jury found the Petitioner guilty as charged on October 3, 2007.

On November 21, 2007, Mr. Taylor filed a motion to withdraw which was granted by the court on December 3, 2007 and new counsel was appointed. On May 15, 2008, this court sentenced Petitioner to a mandatory term of life imprisonment. On May 19, 2008, Petitioner

4

filed a timely notice of appeal. On appeal, Petitioner advanced the following arguments: (1) that he had been deprived of his Sixth Amendment right to counsel when he was interviewed by the government pursuant to the cooperation agreement; and (2) he had been deprived of his Fifth Amendment right against self-incrimination because the government did not provide him with Miranda warnings at the cooperation interview. On January 15, 2010, the Seventh Circuit rejected both arguments and affirmed the judgment and sentence of the Petitioner in United States v. Veal, 360 Fed. App'x 679, 685 (7th Cir. 2010). On February 16, 2010, the Seventh Circuit denied the Petitioner's request for rehearing.

On May 9, 2011, Petitioner filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1). The government filed its Response (#3) on June 13, 2011, arguing Petitioner's claims of ineffective counsel are meritless.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has explained that the benchmark for judging a claim of ineffective assistance of counsel is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). For a claim of ineffective assistance of counsel to justify reversal of a conviction, the petitioner must "prove both (1) that his counsel's performance was objectively unreasonable and (2) that he suffered prejudice as a result." Watson v. Anglin, 560 F.3d 687, 690 (7th Cir. 2009) (citing Strickland, 466 U.S. at 687). To demonstrate that counsel's performance was objectively

5

unreasonable, the movant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. First, the movant must establish specific acts or omissions giving rise to a claim of ineffective assistance, then the court must determine whether such acts or omissions are in fact "outside the wide range of professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009). To satisfy the prejudice "prong," the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner argues that Taylor, his trial counsel, rendered ineffective assistance by a variety of acts and omissions—which can be grouped into the following five claims: (1) failing to conduct a reasonable pretrial investigation; (2) failing to file a motion to suppress evidence obtained pursuant to the search of the apartment; (3) failing to file a motion to suppress statements made by the Petitioner during the cooperation interview; (4) improperly advising Petitioner to cooperate with the government; and (5) neglecting to be present at the cooperation interview. Each of these claims will be discussed in turn.

### A. *Failure to Conduct a Reasonable Pretrial Investigation*

Petitioner's first claim, that Taylor was ineffective for failing to conduct a reasonable pretrial investigation, fails on the merits. When a petitioner alleges counsel's ineffectiveness is based on a supposed failure to investigate, the petitioner has the "burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the

6

investigation would have produced." Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003). A defense counsel's decision not to investigate a possible defense is "assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Even if the defense counsel's decision was unreasonable, the Petitioner has the burden to prove that the counsel's unprofessional errors prejudiced the proceedings' outcome. Id. at 698; see also United States v. Olson, 846 F.2d 1103, 1107 (7th Cir. 1988).

Petitioner, in his Motion (#1), simply argued that Taylor's investigation was ineffective because he failed to interview Detective Root prior to the trial or to hire an independent drug analyst to test the crack cocaine evidence. In his Reply (#6), Petitioner for the first time listed a number of additional potential defense witnesses Taylor failed to investigate: specifically: (1) Toniette Bond who would have testified that Petitioner was only at the Parker residence cutting hair, and that Parker was actually providing her with crack; (2) Shannon Coefield and Kimberly Taliferro, friends of Parker, who allegedly would have testified that they never saw Petitioner deal drugs; (3) Shaqulia Clemmons who allegedly would have corroborated Petitioner's story that he lived elsewhere; and (4) Rico who allegedly would have testified that Petitioner was only at the apartment to cut Rico's hair. Petitioner offers no support, such as affidavits, for any of these "potential" defense witnesses beyond his own statements in his Reply (#6). Petitioner has failed to satisfy the required burden of providing this court with "sufficiently precise information" of what an investigation would have produced. See Hardamon, 319 F.3d at 951.

Moreover, Petitioner's argument fails to adequately show that Taylor's decision not to

7

investigate fell outside the range of professional behavior considering the government's evidence at trial. Specifically, Taylor was aware of the overwhelming evidence that was going to be offered in this case by the government—including Petitioner's own admission—that Petitioner did in fact live at Parker's apartment. Therefore, it certainly was not unreasonable for Taylor to decide not to investigate additional witnesses who would claim that Petitioner lived elsewhere. Also, there is no basis for a finding that the decision not to interview Detective Root prior to trial was unreasonable. Even if this court found that Taylor's conduct was unreasonable, Petitioner was not prejudiced by Taylor's failure to conduct the additional investigation Petitioner suggests, as there was overwhelming evidence that Petitioner lived at Parker's apartment and that Detective Root's testimony was accurate regarding the cooperation interview.

### B. *Failure to File a Motion to Suppress Crack Cocaine Evidence*

Petitioner's second claim, that Taylor was ineffective for failing to file a motion to suppress the crack cocaine evidence, also fails. Petitioner argues that Taylor was ineffective because he should have filed a motion to suppress all drug evidence seized at the apartment because there was insufficient probable cause to support the search warrant—an argument that is completely meritless. As a matter of clearly established law, parties may only successfully challenge a search warrant when they have "a reasonable expectation of privacy in the area and items searched." United States v. Meyer, 157 F.3d 1067, 1079 (7th Cir. 1998). In this case, the Petitioner has consistently, in his testimony at trial, and even in this Motion, maintained that he did not live in the apartment or ever stay at the apartment overnight. Therefore, based on the Petitioner's own statements, he lacks standing to challenge the search warrant for the apartment. Moreover, Petitioner had failed to explain

how he would have been able to rebut the presumption that the police relied on the warrant in good faith.  United States v. Mykytiuk, 402 F.3d 773, 777 (7th Cir. 2005) ("A facially valid search warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. . . . A defendant can rebut the presumption of good faith only by showing that the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it.").  Accordingly, Petitioner is unable to demonstrate that Taylor's failure to file a motion to suppress was objectively unreasonable

### C. *Failure to File Motion to Suppress Cooperation Interview Statements*

Petitioner's third claim, that Taylor was ineffective for failing to file a motion to suppress statements made by Petitioner during the cooperation interview, clearly fails on the merits.  On direct appeal, Petitioner challenged the admissibility of his statements in the cooperation interview as a violation of his Fifth and Sixth Amendment rights.  The Seventh Circuit examined these challenges at depth and explained that they were meritless, as Petitioner's rights were not violated by the admission of the statements.  Moreover, the Seventh Circuit explained that even if these statements had been admitted in violation of Petitioner's constitutional rights, any error was not prejudicial, as even without the statements, "the case against Veals was overwhelming."  Therefore, it is clear that Taylor's decision not to challenge the admissibility of the statements was not unreasonable, and moreover, even if it was unreasonable, it would not have been prejudicial.

### D. *Improper Advice to Cooperate with the Government*

Petitioner's fourth claim, that Taylor was ineffective for improperly advising

9

Petitioner to cooperate with the government by allegedly misleading him as to the terms of the agreement, similarly fails. Petitioner's argument that he was misled seems to focus on his belief that the agreement was for full immunity, rather than use immunity, and an unsupported allegation that Taylor falsely informed him that he would be released if he signed the agreement. The agreement in this case was a *conditional* grant of direct use immunity. The only reason the cooperation agreement is relevant to Petitioner's conviction is because he made incriminating statements in a cooperation interview and later breached that agreement by failing to appear before a grand jury—therefore the conditional grant of immunity, regardless of the type of immunity, was withdrawn in accordance with the agreement. It is therefore irrelevant if Petitioner was in fact confused regarding the nature of the immunity. Additionally, the only possible harm Petitioner suffered from entering into the agreement, for whatever alleged motivation, was the use of his admissions in the cooperation interview. As explained above, the Seventh Circuit on direct appeal made it clear that the admission of these statements was harmless beyond a reasonable doubt—therefore not prejudicial.

### E. *Failure to be Present at the Cooperation Interview*

Finally, Petitioner's fifth claim, that Taylor was ineffective for failing to be present at the cooperation interview, also fails. Petitioner further argues that Taylor was ineffective not only for not attending the interview, but also for not fully explaining the consequences of breaching the contractual agreement prior to the cooperation interview. There is no need to consider whether Taylor's decision not to attend the interview was unreasonable, or whether he failed to fully explain the consequences of breaching the cooperation agreement to the Petitioner, because it is clear that Petitioner has suffered no prejudice. The only possible

injury from this particular alleged ineffectiveness was the admission of his statements made during the cooperation interview.  The admission of these statements, in light of the overwhelming additional evidence, was harmless beyond a reasonable doubt.

## II.  RULE 6 DISCOVERY REQUEST

Petitioner asks this Court to order discovery of a variety of allegedly "exculpatory evidence" such as police reports, notes and videotapes.  Rule 6 of the Rules Governing Section 2255 Proceedings of the United States District Courts provides: "(a) . . . [a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . . (b) . . . [a] party requesting discovery must provide reasons for the request."  Rules Governing § 2255 Cases R. 6(a) & (b).  The Seventh Circuit has explained that to satisfy the requirements of Rule 6, the Petitioner must: "(1) make a colorable claim showing the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery."  Hubanks v. Frank, 392 F.3d 926, 933 (7th Cir. 2004).  Petitioner's § 2255 Motion is based solely on a claim of ineffective assistance of counsel.  First, Petitioner has not made the claim that he, or his trial counsel, was denied discoverable materials in this case.  Moreover, materials that Petitioner and his counsel did not have available to them at the time of the criminal trial are not relevant to Petitioner's claim of ineffective assistance of counsel.  Therefore, because Petitioner has failed to demonstrate good cause for his requested discovery, his request it DENIED.

## III.  RULE 7 EXPANSION OF THE RECORD REQUEST

Finally, Petitioner asks this Court to order expansion of the record.  Rule 7 of the Rules Governing Section 2255 Proceedings of the United States District Courts provides:

"(a) . . . [I]f the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion." Rules Governing § 2255 Cases R. 7(a). This court finds that all of the materials that Petitioner asks be included in this case's record are irrelevant to the Petitioner's claim of ineffective assistance of counsel. Therefore, Petitioner's request is DENIED.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). If the district court denies the certificate a petitioner may request that a circuit judge issue one. Fed. R. App. Proc. 22(b)(1). This court concludes that Petitioner has not made the required "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). Accordingly, this court declines to issue a certificate of appealability.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) Petitioner's Motion (#5) for a Rule 6 Discovery Request and a Rule 7 Expansion of the Record is DENIED.

(3) Because Petitioner has not made a substantial showing of the denial of a

constitutional right, a certificate of appealability is DENIED.

    (4) This case is terminated.

ENTERED this 12th day of December, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE